# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00662-CV

**United Independent School District and Shirley J. Neely, Commissioner, Texas Education Agency, Appellants**

**v.**

**Ann Whitehawk, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. GN202020, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an administrative appeal from a decision by the Commissioner, Texas Education Agency, denying the appeal of Ann Whitehawk's grievance against her employer, United Independent School District (UISD).[1]  *See* Tex. Educ. Code Ann. § 7.057(d) (West 1996 & Supp. 2005).  In her grievance, Whitehawk complained that UISD had violated district policy by reducing its monthly contribution to her health insurance premiums under the district's group plan to less than 90 percent of the monthly premium.  UISD and then the Commissioner denied Whitehawk's grievance, but the district court reversed, finding that the Commissioner's decision was not

---

[1]  UISD is located in Laredo.

supported by substantial evidence and was arbitrary and capricious. We will reverse the district court and reinstate the Commissioner's decision.

## BACKGROUND

As the district court observed, the administrative record in this proceeding is not a model of clarity. It is unclear, at best, concerning several pivotal events underlying Whitehawk's grievance. We can glean the following salient facts, however.

In 1993, UISD adopted Board Policy CRD (Local), which reserves to the UISD Board the authority to determine the school district's contribution to employees' health insurance premiums on an annual basis:

> DISTRICT CONTRIBUTION  The Board annually shall determine its contribution to employees' health insurance premiums as part of the employee contribution and benefits system approved in the budget development and adoption process . . . .

The parties agree that this official Board policy is a term of Whitehawk's employment contract. *See Perry v. Houston I.S.D.*, 902 S.W.2d 544, 547 (Tex. App.—Houston [1st Dist.] 1995, writ dism'd w.o.j.). This policy remained in effect at all times relevant to this appeal.

On August 3, 1999, UISD's director of risk management sent a letter to the district's principals, department managers, and administrators notifying them of changes in the district's group health insurance plan. The letter announced that UISD was switching health insurance carriers from Humana to Trustmark, and enclosed a schedule of informational meetings and enrollment sessions throughout the district, an election form, and comparisons between the current Humana plan and two

2

coverage plans to be offered by Trustmark, a "High Plan" and a "Basic Plan." According to these materials, the High Plan provided benefits comparable to the Humana Plan but at a higher premium, $198.49 per month for employee-only coverage and $502.93 per month for employee and family coverage, as compared to Humana's monthly premiums of $132.30 for employee-only coverage and $333.22 for employee and family coverage. The Basic Plan was closer in cost to the Humana Plan—$134.60 per month for employee-only coverage and $341.02 for employee and family coverage—but provided reduced benefits.

The materials also indicated that UISD would contribute $121.37 toward the monthly premium of any plan and coverage the employee selected, a slight increase from its previous year's contribution of $119.07. Dividing these figures into the premium amounts reveals that UISD would have contributed exactly 90 percent of the premium amount under the Humana plan for employee-only coverage and slightly over 90 percent of the premium for employee-only coverage under the Trustmark Basic Plan. However, under the Trustmark High Plan, UISD's contribution of $121.37 represented slightly over 61 percent of the premium for employee-only coverage.

Ann Whitehawk, an art teacher at United High School, attended one of the informational meetings on August 26, 1999, and learned of the changes in insurance benefits. She filed a Level One grievance complaining that neither Trustmark plan complied with the coverage requirements of section 22.004 of the education code,[2] that the district was improperly cutting

---

[2] At the time of Whitehawk's grievance, section 22.004 provided, in relevant part:

   (a)  Each district shall make available to its employees group health coverage
        provided by a risk pool established by one or more school districts under
        Chapter 172, Local Government Code, or under a policy of insurance or

3

benefits, and that UISD had provided inadequate notice of the changes. She sought two forms of relief: (1) the district should offer its employees a health insurance plan that meets or is comparable to that required under section 22.004 of the education code; and (2) "[t]he district should continue to pay 90% of the employee's [i]nsurance premiums as they agreed to do in the past," including paying 90 percent of premiums for a plan comparable to the section 22.004 standards.[3]

A subsequent October 11, 1999 memorandum from UISD's risk management director represents that UISD added a third Trustmark coverage plan, a "State Plan," with coverages comparable to the section 22.004 standards but at a premium higher than either the Basic or High Plans. The total monthly premium under the State plan was $265.54 for employee-only coverage and $672.84 for employee and family coverage. The materials reflected that, as was the case with the two other Trustmark plans, UISD's contribution toward State Plan monthly premiums would be $121.37, meaning that employees would absorb $144.17 per month for employee-only coverage and $551.47 per month for family coverage. In percentage terms, UISD's contribution would represent

---

group contract issued by an insurer, a company subject to Chapter 20, Insurance Code, or a health maintenance organization under the Texas Health Maintenance Organization Act (Chapter 20A, Vernon's Texas Insurance Code). The coverage must meet the substantive coverage requirements of Article 3.51-6, Insurance Code, and any other law applicable to group health insurance policies or contracts issued in this state.

Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, 1995 Tex. Gen. Laws 2207, 2282-83 (amended 1997, 1999, 2001, 2003, 2005) (current version at Tex. Educ. Code Ann. § 22.004 (West Supp. 2005).

[3] The record indicates that approximately one hundred other UISD employees had initially joined in Whitehawk's grievance. They are no longer parties to this proceeding.

4

approximately 46 percent of the monthly premium for employee-only coverage under the State Plan. Whitehawk ultimately enrolled in the State plan.

UISD thereafter denied Whitehawk's Level One grievance on the basis that it had complied with section 22.004 by offering the State Plan, that it had no obligation to contribute 90 percent of employees' health insurance premiums, and that it had provided adequate notice of the plan changes. Whitehawk continued to press her grievance that she was legally entitled to have UISD contribute 90 percent of the premium cost of the section 22.004-compatible State Plan. After the district denied both her Level Two grievance (to the UISD assistant superintendent for human resources) and Level Three grievance (to the UISD board), she had exhausted her remedies with the district. She appealed the district's denial of her grievance to the Commissioner. *See* Tex. Educ. Code Ann. § 7.057(a) (West 1996 and Supp. 2005).

A hearing was held before a Texas Education Agency administrative law judge. Whitehawk urged that UISD had adopted a policy since 1991 of contributing 90 percent of employee health insurance premium costs, that this policy was incorporated into her employment contract, and that the district had breached the contract by contributing a lower percentage of the premium in the 1999-2000 school year. UISD countered that, while it had contributed 90 percent of premium costs in prior years, it had no year-to-year policy that it would continue making such contributions nor any other obligation to do so in 1999.

In reply, Whitehawk argued that there was no evidence in the administrative record that the UISD board had ever acted under this written policy to officially change what Whitehawk characterized as UISD's year-to-year de facto policy to contribute 90 percent of employee premium

costs. While acknowledging the correspondence and materials referenced above concerning the new Trustmark plans, Whitehawk characterized them merely as communications from subordinate district employees, not evidence of official UISD board action.

The Commissioner, adopting the ALJ's recommendations, denied Whitehawk's appeal. Whitehawk brought a suit for judicial review of the Commissioner's decision in the district court. *See id.* § 7.057(d). The district court reversed the Commissioner's decision, finding that it was not supported by substantial evidence and was arbitrary and capricious. This appeal followed.

## DISCUSSION

UISD and the Commissioner each appealed the district court's judgment.[4] In UISD's fourth issue on appeal and the Commissioner's third issue, they argue that the Commissioner's decision denying Whitehawk's appeal of her grievance is supported by substantial evidence and is not arbitrary and capricious. These issues prove to be dispositive, and we need not reach the parties' other issues.

**Substantial evidence**

*Standard of review*

When reviewing an agency decision under the "substantial evidence" standard, we consider the reliable and probative evidence in the record as a whole. Tex. Gov't Code Ann. § 2001.174(2)(E) (West 2004). We may not substitute our judgment for that of the agency and may

---

[4] This court has also received an amicus curiae brief from the Texas Association of School Boards Legal Assistance Fund urging reversal.

6

only consider the record on which the agency based its decision. *Stratton v. Austin Indep. Sch. Dist.*, 8 S.W.3d 26, 30 (Tex. App.—Austin 1999, no pet.). The issue before us is not whether the agency reached the correct conclusion, but whether there is some basis in the record for its action. *See City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 185 (Tex. 1994); *see also Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984). "Substantial evidence does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' of fact." *Lauderdale v. Department of Agric.*, 923 S.W.2d 834, 836 (Tex. App.—Austin 1996, no pet.) (quoting *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988)). We presume that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence, and the burden to prove otherwise is on the party challenging the decision. *Charter Med.*, 665 S.W.2d at 453; *Stratton*, 8 S.W.3d at 30. If the agency offers more than one ground as the basis for its decision, we will affirm if we find substantial evidence supporting one ground even if all bases given would be independently sufficient to support the decision. *Texas State Bd. of Medical Exam'rs v. Scheffey*, 949 S.W.2d 431, 436 (Tex. App.—Austin 1997, writ denied). Finally, the agency's decision should be reversed only if the party challenging the decision demonstrates that the absence of substantial evidence has prejudiced that party's substantial rights. *See Locklear v. Texas Dep't of Ins.*, 30 S.W.3d 595, 597 (Tex. App.—Austin 2000, no pet.).

### *Application*

Reflecting the apparent focus of the district court, the parties devote much of their briefing to the question of whether the administrative record contains substantial evidence that the

UISD board took official action to *change* its percentage premium contribution for the 1999-2000 school year from the 90 percent rate it applied in previous years.  All of this is predicated on what proves to be the controlling issue in this appeal, however: ***whether substantial evidence supports the Commissioner's determination that UISD had no policy or other continuing obligation requiring it to pay 90 percent of its employees' health insurance premiums during the 1999-2000 school year.***  If UISD's prior practice of contributing 90 percent did not constitute a policy or other obligation to continue doing so year-to-year, it is irrelevant whether there is substantial evidence of official action to depart from that practice.

In his decision, the Commissioner made findings of fact and conclusions of law. Several are related to Whitehawk's central contention that UISD was obligated to contribute 90 percent of her health insurance premiums during the 1999-2000 school year.  The Commissioner found that the UISD board had voted in 1991 and 1993 to pay 90 percent of employees' health insurance premiums and that "[f]rom May 1991 until August 1999, Respondent paid 90% of an employee's health insurance premium."  He also found that UISD's policy provided, "the Board annually shall determine its contribution to employees' health insurance premiums as part of the employee contribution and benefits system approved in the budget development and adoption process."  The Commissioner made the following conclusions of law:

2.  Respondent's votes in 1991 and 1993 to pay 90% of its employees' health insurance premiums were votes to do so only for those years.

3.  Respondent's actions of paying 90% of its employees' health insurance premiums for a number of years did not establish a board policy that required it to pay 90% of its employees' health insurance premiums in future years.

4. Respondent did not have a policy for the 1999-2000 school year that required it to pay 90% of its employees' health insurance premiums.

Whitehawk challenged these conclusions of law as arbitrary and not supported by substantial evidence.

The record contains evidence that, in 1991 and 1993, the Board voted to set its contribution rate at 90 percent. On December 18, 1991, the Board adopted a motion "that the Board pay 90% of the employee's health insurance premium." On May 13, 1993, the Board voted to approve a health insurance provider "with the clarification that the Board would pay 90% coverage on all employees at UISD." These votes were reflected in the Commissioner's findings. The Commissioner also found that UISD did, in fact, contribute 90 percent of employees' health insurance premiums between the 1991-92 and 1998-99 school years. Whitehawk contends that this evidence establishes that the Board had a policy to continue this practice into the 1999-2000 school year and "elected to follow previous decisions in the absence of a current year determination." However, the Commissioner, concluding otherwise, reasoned that these votes and past practices should be viewed in light of UISD's official Board Policy CRD (Local) that "The Board annually shall determine its contribution to employees' health insurance premiums as part of the employee compensation and benefits system approved in the budget development and adoption process."

Viewing these facts in context with Board Policy CRD (Local), there is substantial evidence that UISD did not bind itself to a year-to-year policy to always pay 90 percent of its employees' health insurance premiums but reserved the right to determine its percentage contribution each year. Therefore, in order for Whitehawk to have prevailed in her appeal to the Commissioner,

9

she would have had the burden to prove that the Board acted under Board Policy CRD (Local) to adopt a 90 percent contribution for the 1999-2000 school year. She did not attempt to do so, but instead urges her argument only that the Board "elected inaction." However, there is simply no evidence in the record that the Board "elected inaction" for the 1999-2000 school year. We thus conclude that Whitehawk has failed to meet her burden to show a lack of substantial evidence supporting the Commissioner's conclusion that UISD was not obligated to contribute 90 percent of Whitehawk's health insurance premiums during the 1999-2000 school year.

## Arbitrary and capricious

### *Standard of review*

Agency decisions that are not supported by substantial evidence are deemed arbitrary and capricious. *Public Util. Comm'n. v. Gulf States Util. Co.*, 809 S.W.2d 201, 211 (Tex. 1991). An agency decision is arbitrary when its final order denies parties due process of law or fails to demonstrate a connection between the agency decision and the factors that are made relevant to that decision by the applicable statutes and regulations. *Reliant Energy, Inc. v. Public Util. Comm'n*, 153 S.W.3d 174, 184 (Tex. App.—Austin 2004, no pet.). A court reviewing a decision for arbitrariness should consider all relevant factors and may not substitute its judgment for that of the agency. *See Gulf States*, 809 S.W.2d at 211.

### *Application*

We have already concluded that the Commissioner's decision was supported by substantial evidence. Whitehawk does not argue in her brief that the Commissioner denied her due

process of law or failed to demonstrate a connection between his decision and the factors relevant to that decision. In reviewing the evidence and the law that formed the basis for the Commissioner's findings of fact and conclusions of law, we can find nothing arbitrary or capricious about the Commissioner's decision.

The decision of the Commissioner was supported by substantial evidence and was not arbitrary and capricious. We sustain UISD's fourth issue on appeal and the Commissioner's third issue on appeal. Because this resolution controls our disposition of the appeal, we need not address UISD and the Commissioner's remaining issues. *See* Tex. R. App. P. 47.1.

**CONCLUSION**

The Commissioner's decision was supported by substantial evidence and was not arbitrary and capricious. We reverse the judgment of the district court and render judgment affirming the Commissioner's order.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Reversed and Rendered

Filed: March 17, 2006

11